# In the United States Court of Federal Claims

Nos. 15-365 L; 18-1591 L
Filed: January 17, 2025

|  |  |
|---|---|
| KENT, *et al.*, | ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) ) |
| *Defendant*. | ) ) ) ) |

*Altom M. Maglio*, mctlaw, Sarasota, Florida, with whom was Jeffrey Charles Nelson, Maglio Christopher & Toale, P.A., Washington, D.C., *of counsel*, and Laura Gaskill, Gaskill Law Firm, P.A., Sarasota, Florida, for Plaintiffs.

*Sean Christian Duffy*, Natural Resources Section, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., *Todd Kim*, Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice, and *Jean E. Williams*, Deputy Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice for Defendant.

## OPINION AND ORDER

**MEYERS, Judge**.

**I.     Background**

The conveyances at issue in this rails-to-trails case date to the late 1800s.  ECF No. 97-1 at 231.[1]  CSX Transportation Inc. eventually became the railroad[2] line operator.  *Id.* at 115–16.  In 2013, the railroad filed a notice of exemption with the Surface Transportation Board ("STB")

---

[1] Because ECF No. 97-1 contains several documents and is not consecutively paginated, the court cites to the pagination in the ECF Header.

[2] Because the specific railroad that received the property at issue is generally not material to the parties' dispute, the court refers to them as "the railroad" unless an issue depends on the specific railroad company that obtained the property at issue.

to abandon a rail line[3] in Alachua County, Florida. *Id.* at 11. The STB later issued a Notice of Interim Trail Use ("NITU") concerning the line, invoking the Trails Act, 16 U.S.C. § 1247(d). *Id.* at 6–8.

Fourteen plaintiffs initially sued, alleging a taking of their reversionary interests in the land underlying the rail line. Three remain: Loncala, Inc. ("Loncala"), Robert Michael Shea, and Glenda Green. ECF No. 97 at 8–9. These three plaintiffs have predecessors-in-interest who conveyed an interest in the land underlying the rail line to the railroad. Those interests stem from six deeds and bonds. *Id.* The Plaintiffs contend that each created only an easement to operate a railroad across the property:

- Plaintiff Loncala's claim rests on the High Springs Phosphate Deed. *Id.*
- Plaintiff Green's claim rests on the Imperial Phosphate Deed, the Pyles Bond, and the Wright Deed. *Id.*
- Plaintiff Shea's claim rests on the Price Florida Deed and the Price Savannah Deed. *Id.*

The Government has conceded that the High Springs Phosphate Deed created an easement. ECF No. 101 at 18. Plaintiff Green has abandoned her argument regarding the Pyles "deed" because it is a "bond that did not . . . convey an easement." ECF No. 97 at 9; ECF No. 135 at 5 n.1. The Parties dispute whether the interests conveyed by the remaining deeds transferred an easement to the railroad—in which case the Plaintiffs allege they are entitled to compensation for a taking of their property—or fee simple title to the railroad—in which case the Plaintiffs have suffered no taking. ECF No. 97 at 9; ECF No. 101 at 1.

Both parties move for summary judgment regarding the interpretation of the conveyances.

## II.   Standard of Review

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rules of the Court of Federal Claims ("RCFC") 56(a). The movant has the initial burden to show that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A "genuine" dispute of material fact exists where a reasonable jury "could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a "material" fact is one "that might affect the outcome of the suit under governing law," as opposed to "disputes that are irrelevant or unnecessary." *Id.*

If the movant meets its initial burden, the burden shifts to the nonmovant to show a genuine dispute of material fact. *Id.* at 256–57. The nonmovant can do this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not

---

[3] The line is located on "CSXT's Southern Region, Jacksonville Division, West Coast Subdivision, between milepost AR 716.88, at High Springs and milepost AR 726.69, at Newberry, and milepost ARB 717.11, at High Springs and milepost ARB 718.92, at High Springs in Alachua County, FL." ECF No. 97 at 5.

establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." RCFC 56(c)(1).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original).  And while the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor[,]" *id.* at 255, the nonmovant's evidence must be "significantly probative" and more than "merely colorable" to defeat summary judgment, *id.* at 249–50.

### III. Discussion

#### A. Rails-to-Trails Takings Actions

Congress created the Trails Act "to preserve shrinking rail trackage by converting unused rights-of-way to recreational trails." *Rogers v. United States* (*Rogers I*), 90 Fed. Cl. 418, 427 (2009) (citing *Preseault v. Interstate Com. Comm'n* (*Preseault I*), 494 U.S. 1, 5 (1990)); *see also* 16 U.S.C. § 1241 *et seq.*  To convert the right-of-way into a recreational trail, "the railroad must either (1) file a standard abandonment application with the STB or (2) seek an exemption from filing the application." *Mills v. United States*, 147 Fed. Cl. 339, 344 (2020) (citing *Caldwell v. United States*, 391 F.3d 1226, 1228 (Fed. Cir. 2004)).  If the standard abandonment application is approved or the exemption is granted, "the railroad ceases operation, the STB relinquishes jurisdiction over the abandoned railroad right-of-way and state law reversionary property interests, if any, take effect." *Id.* (citing *Caldwell*, 391 F.3d at 1228–29).  But if an entity expresses its willingness to take on the rail corridor as a recreational trail before final abandonment, the STB issues a Notice of Interim Trail Use, or NITU. *Caldwell v. United States*, 391 F.3d at 1229 (Fed. Cir. 2004).  A NITU allows the railroad and trail sponsor to negotiate a transfer to the trail sponsor to use the rail corridor as a recreational trail.  If they reach an agreement, the railroad transfers the rail corridor to the trail sponsor to operate and the underlying landowner does not get the unencumbered use of their property back. *Id.*

Of course, when "private property interests are taken by the Government pursuant to the Trails Act, the property owners are entitled to just compensation." *Rogers I*, 90 Fed. Cl. at 427 (citing *Preseault I*, 494 U.S. at 13); U.S. Const. amend. V.  A takings question arises "because many railroads do not own their rights-of-way outright but rather hold them under easements or similar property interests." *Preseault I*, 494 U.S. at 8.  Thus, "a taking occurs when, pursuant to the Trails Act, state law reversionary interests are effectively eliminated in connection with a conversion of a railroad right-of-way to trail use." *Caldwell*, 391 F.3d at 1228.  That means there is a taking "if the original easement granted to the railroad under state property law is not broad enough to encompass a recreational trail." *Id.* at 1229.  But "[i]f the railroad owns the underlying right-of-way in fee simple at the time of the alleged taking[,]" there is no taking of any property interests because the railroad, not the adjacent landowners, owns the full bundle of property rights. *See Mills*, 147 Fed. Cl. at 344.

It is therefore necessary to determine who owned which property interests because "[i]n a takings case, 'only persons with a valid property interest at the time of the taking are entitled to compensation.'" *Id.* (quoting *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001)).

Thus, "another party cannot be owed just compensation for the taking of that land." *Id.* (internal quotation marks omitted) (quoting *Whispell Foreign Cars, Inc. v. United States*, 97 Fed. Cl. 324, 330 (2011)). Any takings claim would begin to accrue upon the issuance of the NITU. *Caldwell*, 391 F.3d at 122-29.

The NITU

The STB issued the NITU in this case on July 14, 2014. The court must "determine whether the Government's actions constituted a taking of" any existing property interests on that date. *Barron v. United States*, 171 Fed. Cl. 114, 121 (2024). That inquiry requires resolution of three questions.

First, the court must determine who owned the strips of land underlying the railway. *Mills*, 147 Fed. Cl. at 344 (quoting *Preseault v. United States* (*Preseault II*), 100 F.3d 1525, 1533 (Fed. Cir. 1996) (en banc)). The ownership question asks whether the railroad acquired an easement or fee simple title. *Id.* This is a dispositive hurdle that the Plaintiffs must clear. If the railroad acquired a fee simple, the court need not address the two remaining questions because the Plaintiffs did not hold any reversionary interest in the property that was taken.

Second, if the railroad acquired an easement, the court asks whether "the terms of the easement [were] limited to use for railroad purposes, or did they include future use as public recreational trails?" *Id.* And third, "even if the grants of the [r]ailroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking[,] so that the property owners at that time held fee simples unencumbered by the easements[?]" *Id.*

**B.  Principles of Deed Construction under Florida Law**

The governing law in a rails-to-trails case is the law of the state in which the property is located. *Rogers v. United States* (*Rogers IV*[4]), 814 F.3d 1299, 1305 (Fed. Cir. 2015) (citing *Preseault II*, 100 F.3d at 1543). Because the property in this case is in Florida, the court applies Florida law when analyzing the property rights. And under Florida law, "[t]he effect of a deed, both as to the property conveyed and the character of the estate conveyed, is determined by the intent of the grantor." *Rogers v. United States* (*Rogers V*), 184 So. 3d 1087, 1095 (Fla. 2015); *see also Rogers v. United States* (*Rogers III*), 107 Fed. Cl. 387, 392 (2012) (quoting *Thrasher v. Arida*, 858 So. 2d 1173, 1175 (Fla. Dist. Ct. App. 2003) (explaining that "the intention of the parties . . . governs the interpretation of a document")).

To determine the intent of the grantor, courts "should 'consider the language of the entire instrument[,]. . . both as to the character of [the] estate and the property attempted to be conveyed, and to so construe the instrument as, if possible, to effectuate such intent.'" *Rogers III*, 107 Fed. Cl. at 393 (quoting *Reid v. Barry*, 112 So. 846, 852 (Fla. 1927)); *see also Ivey v. Peacock*, 47 So. 481, 481 (Fla. 1908) ("The general rule of construction obtaining here as

---

[4] This court provided an extensive discussion of Florida law and the *Rogers* line of cases in *Barron*, 174 Fed. Cl. at 120–25. The court refers to these cases with the same numbering as in *Barron*.

4

elsewhere that all parts of an instrument will be looked to, and that construction adopted that carries out most clearly the evident intent of the parties" shall be adopted.). And "[i]f there is no ambiguity in the language employed then the intention of the grantor must be ascertained from that language." *Saltzman v. Ahern*, 306 So. 2d 537, 539 (Fla. Dist. Ct. App. 1975).

Florida also presumes that the grantor intended to convey his or her entire estate unless there is clear language to the contrary:

> Where any real estate has heretofore been conveyed or granted or shall hereafter be conveyed or granted without there being used in the said deed or conveyance or grant any words of limitation . . . such conveyance or grant, whether heretofore made or hereafter made, *shall be construed to vest the fee simple title or other whole estate or interest which the grantor had power to dispose of at that time in the real estate conveyed or granted*, unless a contrary intention shall appear in the deed, conveyance, or grant.

Fla. Stat. § 689.10 (emphasis added).[5] According to the Florida Supreme Court, this statute means that "a deed is presumed to convey fee simple title, or whatever title the grantor had power to convey, unless a contrary intention is shown by the language of the deed." *Rogers V*, 184 So. 3d at 1095 n.5. "No stock words or phrases are required" to indicate what estate and property the grantor intends to convey; rather, "it is only necessary that such words be employed as will show the grantor's intent." *Seaboard Air Line Ry. Co. v. Dorsey*, 149 So. 759, 761 (Fla. 1932).

Numerous Florida cases provide guidance on discerning the grantor's intent. For example, an expansive granting clause that lacks any restrictive or limiting clauses indicates the grantor intended to convey fee simple. *Rogers v. United States* (*Rogers II*), 93 Fed. Cl. 607, 619 (2010), *aff'd*, 814 F.3d 1229 (Fed. Cir. 2015). In *Rogers II*, the original landowner owned the land in fee simple. It conveyed fee simple when it transferred "all of its right, title and interest to the railroad[,]" without an accompanying reference to an easement or any limiting language. *Id.* The court then contrasted the unambiguous language with another deed "in which the grantor transferred to [the railroad] an easement, described as 'a right of way for railroad purposes over and across the following described parcels of land.'" *Id.* (citing *Rogers I*, 90 Fed. Cl. at 429); *see also Andrews v. United States*, 147 Fed. Cl. 519, 526 (2020), *aff'd*, 844 F. App'x 351 (Fed. Cir.

---

[5] Florida adopted the statute's predecessor in 1903:

> Where any real estate shall hereafter be conveyed or granted without there being used in the conveyance or grant any words or limitation, such as heirs or successors, or similar words, such conveyance or grant shall be construed to pass the fee simple or other whole estate or interest which the grantor had power to dispose of in the real estate conveyed or granted, unless a contrary intention shall appear in the conveyance or grant.

*Reid*, 112 So. at 860–61 (quoting 1903 Fla. Laws ch. 5145, § 1). In 1925, Florida made the statute retroactive. *Rogers V*, 184 So.3d at 1095 n.5. Therefore, the court applies the current version of Fla. Stat. § 689.10.

5

2021); *Whispell Foreign Cars*, 97 Fed. Cl. at 335 *amended on reconsideration in part*, 100 Fed. Cl. 529 (2011).

Similarly, a granting clause with a reversionary clause or restrictive language limiting the use of the property indicates the grantor intended to convey only an easement. *Rogers I*, 90 Fed. Cl. at 430–31; *Rogers III*, 107 Fed. Cl. at 394–99; *Whispell Foreign Cars*, 97 Fed. Cl. at 335–36. An instrument describing the interest conveyed as "land" weighs in favor of interpreting the conveyance as granting fee simple. *Rogers II*, 93 Fed. Cl. at 619 (finding persuasive that the descriptions of the conveyed parcels referenced "a 'strip of land,' and two 'tracts of land'" (citation omitted)); *Andrews*, 147 Fed. Cl. at 526 ("The deed refers to a parcel of land, not a right of way."). Similarly, covenants warranting title in an instrument factor in favor of interpreting the instrument as conveying fee simple. *Rogers II*, 93 Fed. Cl. at 619–20. And under Florida law, "the amount of consideration does not inform the interpretation of the deeds." *Id.* at 624 (cleaned up); *Rogers V*, 184 So. 3d at 1097 (explaining how the law in Florida "is that the amount of consideration stated in a deed provides no basis for questioning the validity of the deed" because "[t]he language of the deed determines the nature of the estate conveyed") (cleaned up); *Venice E., Inc. v. Manno*, 186 So. 2d 71, 75 (Fla. Dist. Ct. App. 1966) ("[W]e cannot inquire into the adequacy of the consideration given for disputed conveyances. It is fundamental that the law will not consider the adequacy or the sufficiency of the consideration given for a conveyance or a transaction.").

It becomes less clear, however, when the grantor describes the interest conveyed as a "right-of-way." Such a descriptor "can refer either to a 'right of crossing'—an easement—or to 'a strip of land which a railroad takes, upon which to construct its railroad'—an estate in fee." *Rogers II*, 93 Fed. Cl. at 623. Thus, when an interest is conveyed as a right of way, "[w]hether the railroad obtains a 'right' or 'land' depends on the intent of the parties as reflected by the deed of conveyance." *Id.*; *see also Rogers V*, 184 So. 3d at 1094–95; *see also Preseault I*, 494 U.S. at 16 (explaining that "some rights-of-way are held in fee simple").

Florida permits railroads to "hold fee simple title to land acquired for the purpose of building railroad tracks." *Rogers V*, 184 So. 3d at 1095 (citing *Atl. Coast Line R.R. Co. v. Duval Cnty.*, 154 So. 331 (Fla. 1934); *Clark v. Cox*, 85 So. 173 (Fla. 1920); *Fla Power Corp. v. McNeely*, 152 So. 2d 311 (Fla. Dist. Ct. App. 1960)). Although an easement could permit railroad companies to "accomplish their endeavors, . . . [it] is irrelevant to the question of what the grantors intended to convey in an unambiguous conveyance." *Barron*, 174 Fed. Cl. at 125 (citing *Rogers V*, 184 So. 3d at 1094–95). Again, intent turns on the "express text of the deed[,]" no matter a statute, policy, or factual circumstances. *Rogers II*, 93 Fed. Cl. at 618 (internal quotation marks omitted) (quoting *Fin. Healthcare Assoc. v. Pub. Health Tr.*, 488 F. Supp. 2d 1231, 1239 (S.D. Fla. 2007)); *Rogers IV*, 814 F.3d at 1309 (emphasis in original); *see also Rogers V*, 184 So. 3d at 1098.

The court now turns to the deeds in dispute.

### C.     The Deeds

Six deeds and bonds underlie this case: High Springs Phosphate, Pyles, Wright, Imperial Phosphate, Price Florida, and Price Savannah. The Government conceded liability for the High

Springs Phosphate Deed, admitting that it conveyed an easement. ECF No. 101 at 18. The Plaintiffs no longer seek compensation for the Pyles "deed," because it in fact was a bond. ECF No. 135 at 5–6 n.1. Four remain. The Plaintiffs argue the remaining deeds conveyed easements. ECF No. 97 at 9. The Government says fee simple. ECF No. 101 at 1.

        1.      <u>The High Springs Phosphate Deed</u>

The court starts with the easement-conveying language of the High Springs Phosphate Deed, and then turns to the other deeds. The Government conceded the High Springs Phosphate Deed conveyed only an easement to the railroad for the purpose of operating a railroad across the underlying property. ECF No. 101 at 18. The High Springs Phosphate Deed provides:

> DEED TO RIGHT OF WAY
>
> This Deed, executed [January 28, 1893] by the High Springs Phosphate Company, a Corporation organized and existing under the laws of the State of Florida, . . . to the [railroad company], a Corporation organized and existing under the laws of the State of Florida . . . , WITNESSETH:
>
> That the [High Springs Phosphate Company], for Thirty-five Hundred ($3,500) Dollars, in hand paid, hereby grants bargains, sells, aliens and conveys to the [railroad company] its successors and assigns, a right of way, one hundred (100) feet wide, for the purpose of building, maintaining and operating a Railroad through The High Springs Phosphate Company's lands in Sections Twenty (20) and Twenty nine (29), Township Eight (8) South, of Range Seventeen (17) East, in Alachua County, State of Florida, the strip of land over and upon which said right of way is hereby granted being particularly described as [metes and bounds], a plot of land which lands, with the right of way hereby granted indicated thereon, being hereto attached as a plat of this deed, together with the right to construct such embankments, dig such ditches, and make such changes in the grade of the said lands as may be necessary or advisable in the construction or maintenance of said railroad over said lands, but it is understood that [the railroad company], in constructing its road-bed and track, shall conform to the grade of the railroad already constructed over and across the strip of land which said right of way is hereby granted, at the point where the two roads shall cross.
>
> The right of the [High Spring Phosphate Company], its successors and assigns, to mine and remove all phosphate and mineral deposits in and upon the lands over which a right of way is hereby granted, is hereby specifically reserved, but only in such manner as not to interfere with or endanger the tract of said Railroad Company when constructed.

7

> The [railroad company] shall have twelve months within which to build a Railroad upon the right of way hereby granted.
>
> TO HAVE AND TO HOLD the same unto the [railroad company], its successors and assigns, for the purposes aforesaid, so long as the same shall be so used.

ECF No. 97 at 10.

Several provisions indicate that this deed conveyed only an easement. First, the grantor assigns "a right of way . . . through [its] land." It "does not convey the land itself." *Barron*, 174 Fed. Cl. at 126 (quoting *Rogers I*, 90 Fed. Cl. at 429). In other words, the grantor "is not conveying land, only the right to pass over [its] land." *Id.* Indeed, the deed grants the railroad the right to build embankments and dig ditches on the land, which are things the railroad would be free to do if it owned the land rather than an easement.

Second, the deed has a reversionary provision. It grants to the railroad company and its successors and assigns the property interests conveyed "so long as" the land is used for the operation of a rail line. In other words, the right to enter the land lasts only as long as the railroad company continued to operate the rail line. Inclusion of a reversionary clause is especially significant because it clearly shows that the grantor was not conveying the entire bundle of rights and retained a reversionary interest that was taken when the rail line was converted to a recreational trail.

At bottom, the High Springs Phosphate Deed shows what the grant of an easement looks like and provides contrast to the other deeds at issue in this case, which the court will now assess.

    2.    <u>The Price Savannah Deed and the Wright Deed</u>

Plaintiff Green is a successor to the grantor of the Wright Deed. Plaintiff Shea is a successor to the grantor of the Price Savannah Deed. For many purposes, the language of these two deeds is the same, and the Plaintiffs make the same arguments regarding such language. The court, therefore, addresses those together, and then addresses arguments based on unique portions of the deeds.

**The Wright Deed**

RIGHT OF WAY DEED

> This Indenture, made and entered into [February 25, 1893,] between M. A. Wright (a widow) of the county of Alachua State of Florida . . . and [the railroad company] . . . ,
>
> WITNESSETH, That said [M.A. Wright], for and in consideration of the sum of Five Hundred Dollars . . . , to her in hand paid by the [railroad], . . . the receipt whereof is hereby acknowledged [that M.A. Wright] has granted, bargained, sold, aliened, remised, released, conveyed and confirmed, and by these present does grant,

8

bargain, sell, alien, remise, release, convey, and confirm, unto the [railroad company], and its successors and assigns forever, all of a certain tract or parcel of land situated, lying and being in the County of Alachua State of Florida described as follows to-wit, a Strip of land one hundred feet wide same being fifty feet in width on each side from center line of the track and roadbed of the South Florida Railroad as same is located in and through the Northeast quarter of the Northwest quarter of Section Sixteen (16) in Township Nine (9) South Range Seventeen (17) East[,] together with all and singular, the tenements, hereditaments, and appurtenances, thereunto belonging or in anywise appertaining and the reversions, remainder and remainders, rents, issues and profits thereof and also all the estate, right, title, interest, dower and right of dower, property, possession, claim and demand whatsoever of [M.A. Wright], both in law and in Equity, of, in and to the above granted premises, with the hereditaments and appurtenances, with Full Covenant of General Warranty,

Reserving to myself and assigns the right to mine and remove all phosphate and mineral deposits in such manner as not to interfere with or endanger the track or roadbed of said railroad company when constructed.

TO HAVE AND TO HOLD the above granted premises, with the appurtenances and every part thereof, unto the [railroad company], its successors and assigns, to its own proper use and behoof forever for the use and purpose of the [railroad company] for the track and roadway for said Railroad, and the proper appendages to such track and roadway, and for the building thereon of depots, warehouses and other structures required for the proper transaction of the business of said Railroad Company. Provided always, and these presents are upon the express condition, that [the railroad company] shall construct their railway and put it in operation.

ECF No. 97-1 at 171–73.

### The Price Savannah Deed

RIGHT OF WAY DEED

This Indenture, made and entered into [February 15, 1893,] Joseph T. Price and E.J. Price [the Prices] his wife of the county of Alachua state of Florida . . . and [the railroad company], a corporation duly established, and existing under the laws of the States of Georgia and Florida,

> WITNESSETH, That [the Prices], for and in consideration of the sum of One Dollar[] . . . , to them in hand paid by [the railroad company], at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold, aliened, remised, released, conveyed and confirmed, and by these presents do grant, bargain, sell alien, remise, release, convey, and confirm, unto the [railroad company], and its successors and assigns forever, all of a certain tract or parcel of land situated, lying and being in the County of Alachua State of Florida as follows to wit: [metes and bounds]. Being a strip of land, Fifty (50) feet wide and one thousand (1,000) feet long and adjacent to and west of the right-of-way of the S.F. & W.R'y[,]
>
> together with all and singular, the tenements, hereditaments, and appurtenances, thereunto belonging or in anywise appertaining and the reversions, remainder and remainders, rents, issues and profits thereof and also all the estate, right, title, interest, dower and right of dower, property, possession, claim and demand whatsoever of the [Prices], both in law and in Equity, of, in and to the above granted premises, with the hereditaments and appurtenances, with Full Covenant of General Warranty,
>
> TO HAVE AND TO HOLD the above granted premises, with the appurtenances and every part thereof, unto the [railroad company], its successors and assigns, to its own proper use and behoof forever for the use and purpose of the [railroad company] for the track and roadway for said Railroad, and the proper appendages to such track and roadway, and the building thereon of depots, warehouses and other structures required for the property transaction of the business of said Railway Company.
>
> Provided always, and these presents are upon the express condition, that the [railroad company] shall construct their railway and put it in operation.

ECF No. 97-1 at 205–07.

Begin with the language of the broad, expansive granting clauses. *See Rogers V*, 184 So. 3d at 1097 (cleaned up) (making clear that the "language of the deed determines the nature of the estate conveyed"). The grantors "grant, bargain, sell, alien, remise, release, convey, and confirm" to "[the railroad company], and its successors and assigns forever, all of a certain tract or parcel of land . . . together with all and singular, the tenements, hereditaments, and appurtenances." This language establishes that the grantor was conveying *all* of the "land," indicating that the conveyance was in fee simple rather than creating an easement. *E.g.*, *Barron*, 174 Fed. Cl. at 123 (explaining that "an instrument describing the interest conveyed as 'land' weighs in favor of interpreting the conveyance as granting fee simple").

10

Continue with the recognition that the Wright Deed and the Price Savannah Deed do not have limiting language or a reversionary clause.  To the contrary, the deed explicitly relinquishes any such rights—the grantors "release unto [the railroad company], and its successors and assigns forever . . . [all] reversions, remainder, and remainders."  *See also Rogers II*, 93 Fed. Cl. at 619 (finding that a conveyance was for fee simple because the granting clause did "not contain language limiting the interests conveyed . . . nor d[id] it reference an easement").  The explicit relinquishment of such rights makes the interpretation of the conveyances clear: Each conveyed a fee simple estate.

The Plaintiffs make several arguments unrelated to the text of the granting clauses in an attempt to overcome the grantors' unambiguous intent.[6]  The court will address each in turn.

*The title of the deeds.*  According to the Plaintiffs, *Rogers I* mandates that courts consider the language in the title of the deed to ascertain the grantor's intent.  ECF No. 135 at 5.  The Plaintiffs argue that the deeds' titles here—"Right of Way Deed"—supersede the expansive granting language.  *Id.*  But the text trumps the title.  As explained above, the text makes clear the grantors intended to convey a fee simple estate.  The title of the documents cannot overcome the substantive deed language.  Again, "some rights-of-way are held in fee simple."  *Preseault I*; *see also Robb v. Atl. Coast Line R.R. Co.*, 117 So. 2d 534, 536 (Fla. Dist. Ct. App. 1960) (spelling out that "descriptive words for 'right-of-way purposes' indicated . . . the motive of the grantor in making such deed but did not make of the deed a grant of easement rather than fee title to the property, or create a limitation on the estate so conveyed").  Therefore, the title of the deeds alone is not enough to overcome the operative text of these deeds.

*The description of an indenture deed.*  The Plaintiffs cite to a definition of indenture that they believe is "particularly useful for a right-of-way deed conditioned on certain usage and can be seen as another indication of the parties' intent to convey easements rather than fee simple titles."  ECF No. 135 at 6–7 n.2.  According to Plaintiffs, an "indenture is a particular type of deed that includes a 'specific duration or significance,'" and is "a formal agreement between two or more parties, usually a written document[,]" and where the two parties "agree to continuing obligations."  *Id.*  Offering little analysis, the Plaintiffs conclusively state that the deeds' inclusion of the term "Indenture" makes it more likely that the grantor intended to convey an easement.  *Id.*  This court has previously found that an indenture can transfer fee simple title under Florida law when the granting language clearly does so.  *Rogers I*, 90 Fed. Cl. at 425–26, 433 n.25.  Thus, the court does not consider the fact that these deeds were indentures to overcome the clear and broad granting language.

*Descriptions of the railway corridors.*  Some of the language describing the railway corridor in each of the above deeds includes going "in and through" the original landowner's property.  The Plaintiffs say this language shows an intent to convey an easement.  ECF No. 135 at 7.  They rely on *Rogers I*, citing the Florida Supreme Court decision in *Trailer Ranch v. City*

---

[6] The Plaintiffs also argue that the deeds conveyed easements for railroad purposes only, so any other use would exceed the scope of the easement.  ECF No. 135 at 1.  But that argument turns on whether an easement was in fact what was granted.  As the court has established, the deed conveyed fee simple estates, so this argument falls flat.

11

of Pompano Beach, 500 So. 2d 503 (Fla. 1986) for this proposition. *Id.* at 17–18. But *Rogers I* and *Trailer Ranch* did not hold that the term "over and across the lands" by itself is always indicative of an easement. In *Rogers I, one* of the reasons the court held that the Honore Conveyance conveyed an easement was because "it refers to 'a right of way for railroad purposes *over and across* the . . . parcels of land,'" and that "the words 'across, over, and under' in a conveyance were indicative of an easement, not a fee simple." *Rogers I*, 90 Fed. Cl. at 429–30 (citing *Trailer Ranch*, 500 So. 2d at 506) (emphasis in original). And *Trailer Ranch* ruled that the trial court erred when it found "that the words 'across, over and under' contained in the order of taking granted, as a matter of law, the condemnor the fee simple interest." 500 So. 2d at 506.

Further, this court examined *Trailer Ranch* in *Whispell Foreign Cars* and rejected the proposition that it held that the words "across, over, and under" in a railroad conveyance are always indicative of an easement. *Whispell Foreign Cars*, 97 Fed. Cl. at 336 n.10. The court clarified that "*Trailer Ranch* involved an order of taking rather than a voluntary conveyance and a utility rather than a railroad," and "because the phrase [at issue here] is located in the section describing the strip of land and because there is no language in the conveyance limiting use of the land, it appears to the court that the phrase 'over and across said lands' merely describes the land conveyed." *Id.*

*Rogers III* also clarifies this issue. There, the court explained that "other language in the Honore Conveyance—the phrases 'a right of way' and 'for railroad purposes'—as well as 'over and across . . . the parcels of land,' reflected the grantor's intent to convey an easement." *Rogers III*, 107 Fed. Cl. at 396 (citing *Rogers I*, 90 Fed. Cl. at 429–31). And it held that in the conveyances at issue in that case, "[t]he word 'across,' in conjunction with the words 'as located,' merely describes the location of the subject parcel and does not qualify or limit the property interest the grantors conveyed." *Id.* Like in *Rogers III*, the "in and through" language in the deeds here must be read in context. And in context, this language describes where the conveyed land is, not the interest being conveyed.

The Wright Deed provides that Wright "does grant . . . all of a certain tract or parcel of land . . . one hundred feet wide same being fifty feet in width on each side from center line of the track and roadbed of [the railroad company] as same is located in and through the Northeast quarter of the Northwest quarter[.]" The Price Savannah Deed provides that the Prices "do grant . . . all of a certain tract or parcel of land . . . lying and being in . . . Florida . . . one hundred feet west of the centre line of [the railroad company], as it is located and construed in and through said forty acres." Both clearly use this "in and through" language to describe the strip of land being conveyed, not as limitations on the conveyance. *See Rogers III*, 107 Fed. Cl. at 396; *Rogers II*, 93 Fed. Cl. at 621 ("The language 'through the land of the grantor' in the deed merely describes the location of the strip of land conveyed to [the railroad] and does not define or characterize the nature of the property interest conveyed to [the railroad]."). This conclusion is bolstered by the fact that the language comes after conveying "all of a certain tract or parcel of land" and a more tailored description. And the deeds even refer to the land being conveyed as belonging to the railroad, furthering supporting the court's conclusion.

Finally, the Plaintiffs argue that *Whispell Foreign Cars* "should . . . stand for the proposition that a reference to a right of way railroad purposes over and across parcels of land indicates that the grantor retained an interest in the land conveyed." ECF No. 136 at 10. In

12

doing so, they cite to the Honore Conveyance analyzed in *Rogers I* and addressed in *Barron*. *Id.* This court explained that the granting clause did not convey the land itself, merely "the right to pass over land." *Barron*, 174 Fed. Cl. at 126. And "most importantly for determining [the grantor's] intent is the explicit reversion to his successors if the railroad ceased using the property as a railway." *Id.* This clear reversion makes the grantor's intent unambiguous. The clear reversion is what the deeds at issue here lack.

*The conditions of railroad construction.* The deeds recognize that the conveyance was made "upon the express condition, that [the railroad company] shall construct their railway and put it in operation." The Plaintiffs argue the express condition shows merely an easement was conveyed. ECF No. 135 at 7. But this is a condition subsequent that the respective railroad companies satisfied when they constructed and operated the railway within the given timeframe. And because there was no reversion right—indeed, the deed "expressly convey[s] 'reversions, remainder and remainders'" to the property—this argument misses the mark. Rather, the lack of a reversionary interest further evinces the intent to convey fee simple. *See Rogers III*, 107 Fed. Cl. at 395–96 (finding that the lack of a reversionary clause in a Florida conveyance and under Florida law, "in conjunction with [an] expansive granting clause . . . unambiguously indicate[s] that the . . . conveyances intended to grant fee simple title"); *Robb*, 117 So. 2d at 538 (finding that a deed conveyed fee simple when it contained a clause mandating the railroad permanently maintain a railway station and did not contain a provision "for reverter or termination of grantee's estate or title").

*Strips and gores.* The Plaintiffs argue that the strips and gores doctrine should apply because of the title of the deeds and the express condition of the use of the land. The strips and gores doctrine is policy-based, explaining the presumption to an easement minimizes transaction costs and is "cleaner." *Penn Cent. Corp. v. U.S. R.R. Vest. Corp.*, 955 F.2d 1158, 1160 (7th Cir. 1992). *Penn Central Corp.* is a case from the United States Court of Appeals for the Seventh Circuit applying Indiana law. But the deeds at issue here regard land in Florida. And in Florida, "the language of the deed determines the nature of the estate conveyed.'" *Rogers V*, 184 So. 3d at 1097. The series of policy arguments the Plaintiffs make fail, in significant part because the granting language is clear in each of the deeds at issue. *See Rogers IV*, 814 F.3d at 1309 (explaining that "no statute, state policy, or factual considerations prevail[] over the language of the deeds when the language is clear"). The deeds conveyed fee simple estates.

*The reservation of mineral rights.* The Plaintiffs also contend that the grantor's retention of mineral rights in the Wright Deed shows an intent to convey a right rather than land. ECF No. 135 at 7. Both the Wright Deed and the High Springs Phosphate Deed include reservation of rights clauses. The reservation of rights could support two readings of the deeds. On one hand, the reservation of rights could function simply to ensure that the landowners' mining does not interfere with the railroad's easement. This is how the reservation of rights works in the High Springs Phosphate deed—it ensures that the landowner does not interfere with the railroad easement. On the other hand, the reservation of rights could function as retaining the mineral rights for the grantor when conveying title to the land to the railroad. When read in its entirety, the Wright Deed's reservation of rights functions as a reservation of an interest in land otherwise transferring to the railroad.

The language of the two deeds is different. The High Springs Phosphate Deed provides that the grantor reserves the right "to mine and remove all phosphate and mineral deposits in and upon the lands over which a right of way is hereby granted." ECF No. 97-1 at 174–76. Note that the language refers to the right of way passing over the land. This indicates that the deed was not conveying the land, but an easement over it. More importantly, the High Springs Phosphate deed has an explicit reversionary provision that does much of the heavy lifting in establishing that it conveyed only an easement.

The Wright Deed, however, uses different language—it reserves the "right to mine and remove all phosphate and mineral deposits in such manner as not to interfere with or endanger the track or roadbed of said railroad company." ECF No. 97-1 at 172–73. It does not refer to a right of way passing over land, which is consistent with the conclusion that the grantor was otherwise granting the land to the railroad. And given the broad granting language in the Wright Deed coupled with the lack of any reversionary clause, the reversionary provision in the Wright Deed functions to reserve the mineral and mining rights to the grantor while transferring the remaining property rights to the railroad.

*Nominal consideration for the Price Savannah Deed.* Plaintiff Shea argues that the nominal consideration in the Price Savannah Deed means it conveyed an easement. ECF No. 97 at 15. "The law of Florida, however, is that the amount of consideration stated in a deed provides no basis for questioning the validity of the deed. The language of the deed determines the nature of estate conveyed." *Rogers V*, 184 So. 3d at 1097. Thus, the amount of consideration is irrelevant for determining whether the grantors conveyed land or a right. Plaintiff Shea erroneously cites to *Rogers V* for the proposition that "Florida law does not prohibit a court from including a deed's consideration from an analysis of the parties' intent." ECF No. 135 at 7. But the exact page to which the Plaintiff cites states the contrary: "The law of Florida . . . is that the amount of consideration stated in a deed provides no basis for questioning the validity of the deed." *RogersV*, 184 So. 3d at 1097. And as "the language of the deed determines the nature of the estate conveyed," the deed here clearly conveyed fee simple. Besides, the court is in no place to determine what adequately bargained-for consideration sufficed over 100 years ago. *See Am. Ground Transp., Inc. v. United States*, 165 Fed. Cl. 659, 666 (2023) ("Parties decide for themselves what consideration is sufficient. If bargained for, a mere peppercorn satisfies."). The court now turns to the remaining two deeds.

### 3. The Imperial Phosphate Deed and the Price Florida Deed

Plaintiff Green is the successor to the grantor of the Imperial Phosphate Deed. Plaintiff Shea is the successor to the grantor of the Price Florida Deed. For many purposes, the language of these two deeds is the same, and the Plaintiffs make the same arguments regarding such language. The court, therefore, addresses those together, and then addresses arguments based on unique portions of the deeds.

**The Imperial Phosphate Deed**

RIGHT OF WAY DEED

This Indenture, made and entered into [July 12, 1894] between The Imperial Phosphate Company a corporation existing and established under the laws of the State of Florida . . . , and [the railroad company], a corporation duly established, and existing under the laws of the States of Georgia and Florida,

WITNESSETH, that [The Imperial Phosphate Company], for and in consideration of the sum of Five Dollars . . . , to them in hand paid by the [railroad company], at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged have granted, bargained, sold, aliened, remised, released, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, remise, release, convey, and confirm, unto the [railroad company], and its successors and assigns forever all of a certain tract or parcel of land situated, lying and being in the County of Alachua State of Florida as described as follows to wit a strip or parallelograms of land one hundred feet wide same being fifty feet in width on each side from center line of track and roadbed of the Savannah Florida and Western Railway as it is now located and built in, through and across the Southeast quarter of the Northwest quarter, and the east half of the southwest quarter of section Sixteen (16) in Township Nine (9) South Range Seventeen (17) East containing nine acres more or less Together with all and singular, the tenements, hereditaments, and appurtenances, thereunto belonging or in anywise appertaining, and the reversions, remainder and remainders, rents, issues and profits thereof and also all the estate, right, title, interest, dower and right of dower, property, possession, claim and demand whatsoever of [the Imperial Phosphate Company], both in Law and in Equity, of, in and to the above granted premises, with the hereditaments and appurtenances, with Full Covenant of General Warranty,

Reserving all phosphate and minerals on said land and the right to mine and remove same provided said mining operations do not interfere with or endanger the track and railbed of said Railway, or traffic thereon[.]

TO HAVE AND TO HOLD the above granted premises, with the appurtenances and every part thereof, unto [railroad company], its successors and assigns, to its own proper use and behoof forever for the use and purpose of the [railroad company] for the track and roadway for said railway, and the proper appendages to such track and roadway, and the building thereon of depots, warehouses and other structured required for the proper transaction of the business of said Railway Company. ~~Provided always, and these presents are upon the express condition, that [Savannah, Florida and~~

15

~~Western Railway Company] shall construct their railway and put it in operation.~~[7]

ECF No. 97-1 at 174–76.

### The Price Florida Deed

RIGHT OF WAY DEED

This Indenture, made and entered into [February 1, 1893] between Joseph T. Price and E.J. Price [the Prices], his wife of the county of Alachua state of Florida . . . and [the railroad company], a corporation duly established, and existing under the laws of the State of Florida,

WITNESSETH, That [the Prices], for and in consideration of the sum of Five Hundred Dollars . . . , to them in hand paid by the [railroad company], at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold, aliened, remised, released, conveyed and confirmed, and by these presents to grant, bargain, sell alien, remise, release, convey, and confirm, unto the [railroad company], and its successors and assigns forever, all of a certain tract or parcel of land situated, lying and being in the County of Alachua State of Florida described as follows to wit: A strip of land one hundred feet wide, same being fifty fee in width on each side from center line of Survey of the South Florida Railroad as same is located in and through the Northeast quarter of the Southwest quarter of Section thirty three in Township Eight South Range Seventeen East together with all and singular, the tenements, hereditaments, and appurtenances, thereunto belonging or in anywise appertaining and the reversions, remainder and remainders, rents, issues and profits thereof and also all the estate, right, title, interest, dower and right of dower, property, possession, claim and demand whatsoever of [the Prices], both in law and in Equity, of, in and to the above granted premises, with the hereditaments and appurtenances, with Full Covenant of General Warranty,

Reserving to myself and assigns all valuable phosphate on said land and the right to mine and remove same provided said mining operations do not interfere with or endanger the track and roadbed of said railroad when constructed or traffic thereon.

---

[7] This language is crossed-out in the original deed. ECF No. 97-1 at 174–76.

> TO HAVE AND TO HOLD the above granted premises, with the appurtenances and every part thereof, unto the [railroad company], its successors and assigns, to its own proper use and behoof forever for the use and purpose of [the railroad company] for the track and roadway for said Railroad, and the proper appendances to such track and roadway, and for the building thereon of depots, warehouses and other structures required for the property transaction of the business of said Railroad Company. ~~Provided always, and these presents are upon the express condition, that [South Florida Railroad Company] shall construct their railway and put it in operation.~~[8]

*Id.* at 202–04.

The language used in the above deeds mirrors some of the language used in the deeds analyzed *supra* Section III.E.2.  For example, the grantors "grant, bargain, sell, alien, remise, release, convey and confirm" to the railroad company "and its successors and assigns forever" a parcel of land.  The same reasons that the Wright Deed and the Price Savannah Deed conveyed fee simples apply equally to the Imperial Phosphate Deed and the Price Florida Deed.  The Plaintiffs cannot avoid the expansive language and the lack of reversionary clauses.

The Plaintiffs also make the reservation of rights argument, the "Right of Way Deed" title argument, strips and gores argument, and language describing the railway corridor argument.  ECF No. 135 at 6–7.  Those arguments, which the Plaintiffs make as to the Imperial Phosphate Deed and the Price Florida Deed, fail for the reasons described above. The Plaintiffs' nominal consideration argument as applied to the Imperial Phosphate Deed fails for the reasons described above.

The Plaintiffs also argue that the Pyles bond lends credence to its argument that the Imperial Phosphate Deed conveyed an easement. ECF No. 135 at 5–6 n.1.  The Pyles bond reads as follows:

> KNOW ALL MEN by these present, that I, SR Pyles of the County of Marion and State of Florida for and in consideration of the sum of One Dollar[] do hereby bind myself, my heirs, executors, administrators and assigns, firmly by these presents, to make good and sufficient deeds of warrantee to So Fla RR Co of the State of Florida, to a right of way 100 feet wide through the following described land with: SE ¼ of NEW ¼ & E ½ of SW ¼ [ineligible] 16 [ineligible] SR 1 [ineligible] E, Alachua Co Fla
>
> Reserving to myself and assigns the right to mine and remove all phosphate and mineral deposits in such manner as not to interfere with or endanger the track or road-bed of said railroad company when constructed.  The conditions of the above bond being that the

---

[8] This language is crossed-out in the original deed.  ECF No. 97-1 at 204.

17

>said So Fla RR Co shall within 6 months build a railroad through
>said property; otherwise of no force and effect.

ECF No. 97-1 at 218.

The Plaintiffs say that the above language "evidence[s] an intention to convey a right of way easement to property that was . . . later conveyed in the very same location and to the same railroad[.]" ECF No. 135 at 5–6 n.1. The individual who signed the Pyles bond also signed the Imperial Phosphate Deed. *Id.* The language in the Pyles bond reserving an interest in the property—"otherwise of no force and effect"—if the railroad's construction did not begin within six months—would surely have been included in the Imperial Phosphate deed if such an intention was there. As it was not, this argument falls, too. Besides, the Pyles bond "has no granting clause and thus does not grant any estate in land." ECF No. 101 at 20.

### D. Motion to Bifurcate

The Plaintiffs additionally requested this court "deconsolidate Loncala, Inc. v. United States, Case No. 1:18-1591-TCW (Loncala) from Kent v. United States, Case No. 1:15-cv-00365-RHH (Kent)." ECF No. 137 at 1. According to the Plaintiffs, this is appropriate because the Government conceded liability for Loncala while "[t]he issue of liability remains in dispute for the Shea and Green properties." *Id.* at 7. And "[t]hus, deconsolidation will promote judicial economy" and allow "the Court to focus on liability for the two properties where it is at issue, and to focus on valuation where it is not." *Id.* The Government opposed the motion, arguing the reasons for consolidation remain valid, the "Plaintiffs offer no good reason to deconsolidate the case at this stage of the litigation," and "if the Court enters summary judgment for the United States on the threshold liability issues pertaining to plaintiffs Green and Shea, the Motion to Deconsolidate will likely become moot since only plaintiff Loncala's claim will remain." ECF No. 138 at 3–5.

Indeed, Plaintiffs' motion has become moot. The only claim that survives the motion for summary judgment is Loncala's takings claim relating to the High Springs Phosphate deed. Therefore, there is nothing to deconsolidate. Accordingly, the Plaintiffs' motion to bifurcate is denied as moot.

### IV. Conclusion

For the foregoing reasons, the Plaintiffs' Motion for Partial Summary Judgment, ECF No. 96, is DENIED. The Government's Cross-Motion for Partial Summary Judgment, ECF No. 101, is GRANTED. Plaintiffs' Motion to Bifurcate, ECF No. 137, is DENIED-AS-MOOT. The Clerk's Office shall enter judgment for the Government on the claims of Plaintiffs Robert Michael Shea and Glenda Green. Pursuant to Rule 54(b), the court determines that there is no just reason for delay entering judgment for the Government as to the claims of Plaintiffs Robert Michael Shea and Glenda Green.

The parties have indicated their desire to mediate the remaining claim of Loncala, Inc. The court will refer this remaining claim to mediation.

It is so ORDERED.

<u>s/ Edward H. Meyers</u>
Edward H. Meyers
Judge